Filing # 70716504 E-Filed 04/18/2018 09:41:37 AM

THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA

EMERSON PARK HOMEOWNERS
ASSOCIATION, INC., a Florida corporation;
GHAZI ALRIFAI and SOUHA KAZMA;
JOVAN BROWN and AUDRA WOOD;
HECTOR DUARTE and MARITZA LOPEZ;
RHEA and WADE EDWARDS; LISSEIDY and
MARCELO GARCIA; CLARE LEE and
KATHLEEN GARNER; ADAM and DANAE
JACKSON; JUSTIN JACKSON and TRACI
DAVIS; ANITA and TRAVIS MARTIN;
JOHNATHAN MCGRIFF; DAVID MEJIAS
VILLEGAS and JULIANA BUSCH; ROBERT
NAFFZIGER and DEANNA ALTILIO;
EDGARD ORTIZ; ROSE and JAMES REYES;
TERRA SIMON, as individuals, on behalf of
themselves and all others similarly situated.

Case No.:

COMPLAINT
CLASS REPRESENTATION

   Plaintiffs,

v.

BRETT LUNDEQUAM, an individual d/b/a
LUNDEQUAM DEVELOPMENT, LLC;
CENTEX REAL ESTATE CORPORATION, a
Foreign Profit Corporation; DAVID GUDE, an
individual; NOMAS CORP, a Foreign Profit
Corporation; PULTE HOME CORPORATION,
a Foreign Profit Corporation; PULTE
PURCHASING CORPORATION, a Foreign
Profit Corporation; and PULTEGROUP, INC., a
Foreign Profit Corporation.

   Defendants.     /

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL
### (CLASS REPRESENTATION)

  Plaintiffs EMERSON PARK HOMEOWNERS ASSOCIATION, INC., in its own right

and on behalf of all members of this Association pursuant to Fla. R. Civ. P. 1.221

1124988\v2

("Association"), GHAZI ALRIFAI and SOUHA KAZMA; JOVAN BROWN and AUDRA WOOD; HECTOR DUARTE and MARITZA LOPEZ; RHEA and WADE EDWARDS; LISSEIDY and MARCELO GARCIA; CLARE LEE and KATHLEEN GARNER; ADAM and DANAE JACKSON; JUSTIN JACKSON and TRACI DAVIS; ANITA and TRAVIS MARTIN; JOHNATHAN MCGRIFF; DAVID MEJIAS VILLEGAS and JULIANA BUSCH; ROBERT NAFFZIGER and DEANNA ALTILIO; EDGARD ORTIZ; ROSE; JAMES REYES; and TERRA SIMON (collectively, "Homeowners")[1] individually and as the appropriate class representatives of all members of the Association who own single-family homes constructed by the defendants, by and through undersigned counsel, hereby sue the following defendants and seek trial by jury: BRETT LUNDEQUAM, an individual d/b/a LUNDEQUAM DEVELOPMENT, LLC; CENTEX REAL ESTATE CORPORATION, a Foreign Profit Corporation; DAVID GUDE, an individual; NOMAS CORP, a Foreign Profit Corporation; PULTE HOME CORPORATION, a Foreign Profit Corporation; PULTE PURCHASING CORPORATION, a Foreign Profit Corporation; and PULTEGROUP, INC., a Foreign Profit Corporation (collectively, "DEFENDANTS"). In support thereof, the Association and Homeowners allege as follows:

## NATURE OF THE CASE

1.      This is an action for damages arising from the negligent and defective development, design, construction and sale of the approximately 137 single-family homes in the Emerson Park subdivision located in Orange County, Florida, that DEFENDANTS designed, developed, constructed, and built (collectively, the "Homes").

2.      The Association brings this action in its own right and on behalf of the Association's members, pursuant to Fla. R. Civ. P. 1.221. Alternatively, Homeowners assert

---

[1] The list of Homeowners' full names and addresses are set forth on attached Exhibit A.

claims, both on their own behalf and as class representatives (pursuant to Fla. R. Civ. P. 1.220) for all members of the Association who own Homes which DEFENDANTS constructed in the Emerson Park subdivision.

## JURISDICTION AND VENUE

3.     This is an action for monetary damages in excess of $15,000.00, exclusive of interest, costs, and attorney's fees, and this Court otherwise has jurisdiction over the subject matter hereof.

4.     The Homes which are the subject of this action are located in Orange County, Florida.

5.     The Association has an office for the transaction of its usual and customary business in Orange County, Florida.

6.     Homeowners reside in Orange County, Florida, and/or own one or more of the Homes located in Orange County.

7.     At all times material, DEFENDANTS conducted business or resided in Orange County, Florida.

8.     The acts and/or omissions giving rise to this complaint took place in Orange County, and each cause of action occurred in Orange County, Florida. Therefore, jurisdiction and venue are proper in this County.

9.     All conditions precedent to bringing this action have occurred or have been waived, including, but not limited to, the requirements of Chapter 558, Florida Statutes.

10.    The alleged defects herein have been examined and certified by an appropriately licensed Florida engineer, design professional, contractor or otherwise licensed Florida individual or entity.

3

## PARTIES

11.    The Association is a corporation organized and existing under Chapter 720 of the Florida Statutes to provide a corporate entity, pursuant to § 720.302, Florida Statutes, for the operation and management of the Homes. The Association asserts claims on behalf of all of Homeowners, pursuant to its governing documents and Fla. R. Civ. P. 1.221.

12.    Homeowners are the lawful fee-simple owners of certain of the Homes identified in Exhibit A. Homeowners bring their individual claims and are the appropriate representatives of the class of owners of all Homes in the Emerson Park subdivision, which DEFENDANTS constructed and/or sold and which suffer from negligent and defective construction.

13.    Upon information and belief, defendant PULTE HOME CORPORATION is a Michigan corporation authorized to do business in Florida, with its principal address located at 3350 Peachtree Road Northeast, Suite 150, Atlanta, GA 30326.

14.    Upon information and belief, defendant PULTE HOME CORPORATION served as the developer for the common areas of the community and construction of the Homes.

15.    Upon information and belief, defendant PULTE HOME CORPORATION also served as the general contractor, as that term is defined in § 489.105(3)(a), Florida Statutes, for the common areas of the community and construction of the Homes.

16.    Upon    information    and    belief,    defendant    PULTE    PURCHASING CORPORATION is a Michigan corporation, not registered in Florida, with its principal address located at 601 Abbot Road, East Lansing, MI 48823.

17.    Upon    information    and    belief,    defendant    PULTE    PURCHASING CORPORATION served as the developer for the common areas of the community and construction of the Homes.

18.    Upon    information    and    belief,    defendant    PULTE    PURCHASING CORPORATION also served as the general contractor, as that term is defined in § 489.105(3)(a), Florida Statutes, for the common areas of the community and construction of the Homes.

19.    Upon information and belief, defendant PULTEGROUP, INC. is a Michigan corporation, not registered in Florida, with its principal address located at 601 Abbot Road, East Lansing, MI 48823.

20.    Upon information and belief, defendant PULTEGROUP, INC. served as the developer for the common areas of the community and construction of the Homes.

21.    Upon information and belief, defendant PULTEGROUP, INC. also served as the general contractor, as that term is defined in § 489.105(3)(a), Florida Statutes, for the common areas of the community and construction of the Homes.

22.    Upon    information    and    belief,    defendant    CENTEX    REAL    ESTATE CORPORATION is a Nevada corporation authorized to do business in Florida, with its principal address located at 3350 Peachtree Road Northeast, Suite 150, Atlanta, GA 30326.

23.    Upon    information    and    belief,    defendant    CENTEX    REAL    ESTATE CORPORATION served as the developer and general contractor, as that term is defined in § 489.105(3)(a), Florida Statutes, for the common areas of the community and construction of the Homes.

5

24.     Upon information and belief, defendant NOMAS CORP is a Nevada corporation authorized to do business in Florida, with its principal address located at 3350 Peachtree Road Northeast, Suite 150, Atlanta, GA 30326.

25.     Upon information and belief, defendant NOMAS CORP served as the developer for the common areas of the community and construction of the Homes.

26.     Upon information and belief, defendant NOMAS CORP also served as the general contractor, as that term is defined in § 489.105(3)(a), Florida Statutes, for the common areas of the community and construction of the Homes.

27.     The Defendants identified in paragraphs 12-26 are collectively referred to herein as the "CORPORATE DEFENDANTS."

28.     Upon information and belief, defendant BRETT LUNDEQUAM d/b/a Lundequam Development LLC ("LUNDEQUAM") is an individual resident of Florida licensed as a Certified General Contractor in Florida, with his principal address located at 213 W. Comstock Avenue, Winter Park, Florida 32789.

29.     Upon information and belief, LUNDEQUAM served as a general contractor and/or primary qualifying agent (as those terms are defined in §489.105(3)(a) and §489.105(4), Fla. Stat.) for CORPORATE DEFENDANTS for certain Homes.

30.     Upon information and belief, defendant DAVID GUDE ("GUDE") is an individual resident of Florida licensed as a Certified General Contractor in Florida, with his principal address located at 16143 Jessamine Road, Dade City, Florida 33523.

31.     Upon information and belief, GUDE served as a general contractor and/or primary qualifying agent (as those terms are defined in §489.105(3)(a) and §489.105(4), Florida Statutes) for CORPORATE DEFENDANTS for certain Homes.

6

32.     The Defendants identified in paragraphs 28-31 above are collectively referred to herein as the "INDIVIDUAL DEFENDANTS."

33.     As a result of the INDIVIDUAL DEFENDANTS' and CORPORATE DEFENDANTS' conduct, the Association and Homeowners have been required to retain the services of the undersigned counsel to represent their interests in this action and are obligated to pay a reasonable fee for the services.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF: STUCCO DEFECTS PRESENT**

34.     The exterior(s) of the Homes are all constructed with Stucco.

35.     The first floor of all Homes is similarly constructed with Stucco applied directly over masonry walls.

36.     The second floor of all Homes is similarly constructed with Stucco attached to lath applied over building wrap attached to wood sheathing.

37.     The governing building code for the construction of all Homes is the 2004 Florida Building Code (the "Code).

38.     The defects and deficiencies in the Stucco are substantially similar for all Homes, uniformly plague all Homes, and require the same remediation and repair for all Homes.

39.     The Stucco defects and deficiencies include, but are not limited to, the following:

i.      Excessively cracked stucco in violation of the 2004 Florida Residential Code ("FRC") FRC: R703.6.1, the standards prescribed by the American Society for Testing and Materials ("ASTM") ASTM C926: 5.2.1, and/or the prevailing local industry standard;

ii.     Insufficient length of wire lath staples in violation of FRC: R703.6.2, ASTM C1069: 7.10.2.2., and/or the prevailing local industry standard;

      iii.     Poor embedment of lath into plaster in violation of FRC: R703.6.1, ASTM C926: 7.2.1, and/or the prevailing local industry standard;

      iv.     Staples installed through window flashing in violation of FRC: R703.1 and/or the prevailing local industry standard;

      v.     Stucco paper backing not integrated with window flashing at sill in violation of FRC: R703.1 and/or the prevailing local industry standard; and,

      vi.     Improper stucco plaster installation in violation of FRC: R703.6.1, ASTM 926: 7.1.6, and/or the prevailing local industry standard.

40.    The deficiencies identified in paragraph 39 above are collectively referred to herein as the "Stucco Deficiencies."

**FACTS COMMON TO THE ASSOCIATION'S CLAIMS FOR RELIEF**

41.    The Association's members are collectively the fee-simple owners of the Homes, common areas, and the real property which comprise the Emerson Park community.

42.    Upon information and belief, CORPORATE DEFENDANTS controlled the Association until turnover.

43.    The Stucco Deficiencies and other defects have caused excessive and unsightly cracking of the cement plaster; cracking and discoloration of the paint; excessive and unsightly discoloration of the exterior walls of the Homes due to water intrusion; and significant deterioration of the exterior walls of all Homes, in violation of the Association's Maintenance and Repair Duties for which the Association has the right and power to repair. Titled "Maintenance and Repair," Article V of the Declaration for the Association sets forth regulations that are "necessary to maintain the property to a level consistent with the Community-Wide

Standard" of the Homes throughout the community, and imposes this requirement on all members of the Association regarding the aesthetics, maintenance, and repair of the exterior of their Homes, including the Stucco. Article IV of the Declaration, titled "Architecture and Landscaping," provides that the Association has the right and power to review and approve any and all changes to the exterior of the Homes to enforce the quality of the work and the uniformity of the community, and to maintain minimum aesthetic guidelines. Article V of the Declaration also requires members to maintain the exterior surfaces and structures of Homes in accordance with all applicable laws, rules, or regulations, including the Code and industry standards.

44. Importantly, Article VII, titled "Association Powers and Responsibilities," provides that the Association has the rights and powers to enforce the provisions of the Declaration. These rights and powers to enforce the Declaration include the enforcement of provisions of Articles IV and V, including maintaining or repairing the Homes at the Homeowner's cost.

45. The Stucco Deficiencies are so substantial and so consistently and uniformly plague all Homes that it is impractical and/or impossible for the owners of the Homes to meet the requirements of Articles V and VI in the Declaration, and for the Association to enforce them.

46. The causes of the action alleged herein concern matters of common interest. Pursuant to Fla. R. Civ. P. 1.112, the Association is therefore the lawful, adequate, and appropriate representative to seek redress for the Stucco Deficiencies in the Homes.

47. Even in the absence of the Declaration, the Stucco Deficiencies are of such a substantial nature that they consistently and uniformly plague all of the Homes and thus affect matters of common interest. Accordingly, pursuant to Fla. R. Civ. P. 1.221, the Association again is the lawful, adequate, and appropriate representative to seek redress for the Stucco

Deficiencies.

## CLASS REPRESENTATION ALLEGATIONS

48.     Pursuant to Fla. R. Civ. P. 1.220(b)(1)(A); or, alternatively, Fla. R. Civ. P. 1.220(b)(1)(B); or, alternatively, Fla. R. Civ. P. 1.220(b)(3), the Homeowners bring their direct claims and also serve as the appropriate class representatives of the approximately 137 owners of the Homes which all suffer from the same Stucco Deficiencies.

49.     Homeowners are the appropriate class representative(s) of the proposed class, to be defined as follows:

> **The Emerson Park Pulte Community Class**: All current owners of the Homes in the Emerson Park residential development in Apopka, Florida, (a) which DEFENDANTS designed, developed, constructed, built, and/or sold; (b) with claims that are not otherwise barred; and (c) which have the Stucco Deficiencies defined in paragraph 39 above.

50.     Pursuant to Fla. R. Civ. P. 1.220(b)(1)(A); Fla. R. Civ. P. 1.220(b)(1)(B); and/or Fla. R. Civ. P. 1.220(b)(3), a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Additionally, the questions of law or fact common to the claim of the Association and Homeowners predominate over any question of law or fact affecting only individual members of the class as follows:

i.     All original purchasers of the Homes entered into substantially similar sales contracts with DEFENDANTS.

ii.     The Homes were all to be constructed in accordance with the same Code, building standards, and minimum requirements.

iii.     The Homes all have a substantially similar design.

10

iv.   The Homes were all constructed using a substantially similar set of plans and specifications.

v.    The Stucco on the Homes utilized the same construction design, means, methods, and materials.

vi.   The Stucco Deficiencies are substantially similar for all Homes regardless of home type, elevation, weather exposure, or date of construction, and require the same or similar repair. There exists a common question of fact as to whether DEFENDANTS' improper design, development, construction of the substantially similar Homes caused the substantially similar Stucco Deficiencies present at the Homes.

vii.  Specifically, the Association undertook an investigation, which included destructive testing and visual inspection of the Homes, and which revealed the following:

     (1)   All Homes have consistent stucco cracking patterns;

     (2)   All Homes have excessive cracking in similar locations;

     (3)   The stucco cracking patterns and locations were caused by the Stucco Deficiencies; and

     (4)   The breadth, nature, and consistency of the Stucco Deficiencies requires removal and replacement of all stucco on the Homes, regardless of home type or elevation.

51.   Homeowners are the appropriate lead Plaintiffs as their claims are typical of the other plaintiffs in the putative class, as follows:

     i.    The other members of the class would bring the same causes of action to recover damages for the stucco deficiencies present at the Homes in the Emerson Park community.

     ii.     Homeowners and the rest of the putative class reside in the same community and are subject to the same Declaration and same covenants running with the land.

     iii.    Homeowners and the rest of the putative class have the same interest in recovering damages to remediate the common Stucco Deficiencies present at the Homes in the Emerson Parks community.

52.     Homeowners will fairly and adequately protect and represent the interests of each member of the class, as follows:

     i.     Homeowners are competent to lead the Class and have not been convicted of any crimes related to dishonesty; and,

     ii.     Homeowners are not antagonistic to any other members of the Class.

53.     Class adjudication is the superior form for this controversy, as evidenced by the following:

     i.     The facts and allegations pled in paragraphs 39 and 48 – 52 above;

     ii.     The numerous related but separate lawsuits that would need to be filed by Homeowners.

     iii.    The forum of Orange County is ideal for all class members because, by definition, all properties involved are located in Orange County; and

     iv.    As a practical matter, it will be extremely burdensome on the Orange County Court, and its pool of jurors, to conduct dozens (if not hundreds) of separate jury trials regarding the substantially similar actions, resulting defect, resulting property damage, and law.

## FACTS COMMON TO ALL CLAIMS

54.     The Association and its members (the Homeowners) are collectively the fee-simple owners of the Homes, common areas, and the real property which comprise the

12

community.

55.    Upon information and belief, CORPORATE DEFENDANTS controlled the Association until turnover.

56.    The causes of action alleged herein concern matters of common interest to the owners of the Homes and the Association's members, including, but not limited to, matters affecting the exterior walls, roofs, and windows of the Homes and common areas of the community.

57.    DEFENDANTS undertook to construct the Homes for sale to, and use of, the general public, including the Association, its members, and their predecessors in interest.

58.    In so doing, DEFENDANTS failed to reasonably and adequately construct the Homes by failing to design, develop, and/or construct the Homes in accordance with the Florida Building Code, manufacturers' guidelines and recommendations, permitted plans and specifications, and the standards in the industry.

59.    The Association has discovered systemic construction defects related to the development, design, and construction of the Homes and common areas that include, but are not limited, to the following:

     i.     Excessively cracked stucco in violation of the 2004 Florida Residential Code ("FRC") FRC: R703.6.1, the standards prescribed by the American Society for Testing and Materials ("ASTM") ASTM C926: 5.2.1, and/or the prevailing local industry standard;

     ii.    Insufficient length of wire lath staples in violation of FRC: R703.6.2, ASTM C1069: 7.10.2.2., and/or the prevailing local industry standard;

iii.     Poor embedment of lath into plaster in violation of FRC: R703.6.1, ASTM C926: 7.2.1, and/or the prevailing local industry standard;

iv.     Staples installed through window flashing in violation of FRC: R703.1 and/or the prevailing local industry standard;

v.      Stucco paper backing not integrated with window flashing at sill in violation of FRC: R703.1 and/or the prevailing local industry standard; and,

vi.     Improper stucco plaster installation in violation of FRC: R703.6.1, ASTM 926: 7.1.6, and/or the prevailing local industry standard.

60.     As a direct result of the collective and individual failures on the part of DEFENDANTS, the Association and its members have suffered and continue to suffer damages proximately caused by defects and deficiencies in the construction of the Homes.

61.     The defects and deficiencies were not readily discoverable by the Association or its members through reasonable inspection at the time of purchase, and the Association and its members became aware of the defects and deficiencies only after inspections performed by expert consultants following turnover.

62.     In compliance with § 558.004, Florida Statutes, the Association has served upon DEFENDANTS written notices (the "558 Notices") including statements that the notice was being given to satisfy the requirements of Chapter 558, Florida Statutes, and specifying in reasonable detail the common defects and damages and injuries to the Homes that is the subject of the claims, and describing in reasonable detail the common causes of the common defects to the extent known, the nature and extent of the damages and injuries resulting from the defects to the extent known, and the location of each defect to the extent known. A Florida certified design

professional and/or engineer has examined and certified the defects as alleged in the 558 Notices and in paragraphs 39 and 59.

63.    The notices were sent on behalf of the Association, in its own right and on behalf of all members of the Association, and in accordance with the scope of its duties pursuant to Chapter 720, Florida Statutes.

64.    Since turnover, the Association has performed, and will continue to perform, routine maintenance within the Emerson Park community.

65.    Cumulatively, the conditions described in paragraphs 39 and 59 have resulted in damage to the Homes, including, but not limited to water penetration that has caused damage to other property, including, but not limited to, work performed by other trades, interior finishes, and damage to others' personal property for which the Association has been and will continue to be responsible.

66.    Extensive rehabilitation and repair is necessary to repair the damage caused by the deficiencies identified in paragraphs 39 and 59 and/or to reinstate the above system assemblies so that they conform to the applicable code(s), meet reasonable and expected performance standards, and comply with the permitted plans and specifications.

**COUNT I**
**NEGLIGENCE AND VICARIOUS LIABILITY**
*(THE ASSOCIATION v. CORPORATE DEFENDANTS in Their Capacity as Developers)*

67.    The Association adopts and re-alleges paragraphs 1-66 above.

68.    The Association brings this claim against the respective CORPORATE DEFENDANTS for Homes in which they served as the Developer(s).

69.    CORPORATE DEFENDANTS respectively served as the developer(s) for certain of the Homes. As such, CORPORATE DEFENDANTS were respectively responsible for all aspects of the construction of the Homes in which they served as the developer(s), including, but

15

not limited to, exercising reasonable care in the design and construction of the Homes; and in ensuring their contractors and subcontractors constructed the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

70.     As the developers, CORPORATE DEFENDANTS had non-delegable duties to the Association and its members to exercise reasonable care so that the Homes were constructed (a) in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations; and (b) so as to avoid damaging the Homes.

71.     CORPORATE DEFENDANTS breached their duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stucco Deficiencies, thereby necessitating repairs.

72.     As the developers for the subject project, CORPORATE DEFENDANTS are vicariously responsible for the negligent construction performed on the Homes by their contractors and subcontractors, for those Homes in which the CORPORATE DEFENDANTS served as developers.

73.     As a direct and proximate result of CORPORATE DEFENDANTS' breach of the above-mentioned duties, the Association and members of the Association will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

**WHEREFORE**, the Association demands trial by jury and judgment against CORPORATE DEFENDANTS for damages including, but not limited to, the cost of repairing

16

the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT II
## NEGLIGENCE AND VICARIOUS LIABILITY
### (THE ASSOCIATION v. CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS in their Capacity as General Contractors and Qualifiers, Respectively)

74.     The Association adopts and re-alleges paragraphs 1-66 above.

75.     The Association brings this claim against CORPORATE DEFENDANTS and their respective INDIVIDUAL DEFENDANTS for those Homes on which they served as the general contractors and/or primary qualifiers.

76.     CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for certain of the Homes and were responsible for all aspects of the construction of said Homes, including, but not limited to, exercising reasonable care in designing and constructing the Homes; and in constructing and overseeing the construction of the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

77.     As general contractors and/or qualifiers, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS had non-delegable duties to the Association, the Homeowners, and all Association members to exercise reasonable care in constructing the Homes in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations and guidelines, and in such a way so to not damage other property.

78.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS breached their duties by negligently constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stucco Deficiencies, thereby necessitating repairs.

79.    As the general contractors and/or qualifiers for the subject project, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS are vicariously responsible for the negligent construction performed by their subcontractors which worked on the Homes.

80.    As a direct and proximate result of CORPORATE DEFENDANTS' and INDIVIDUAL DEFENDANTS' breach of the above-mentioned duties, the Association and members of the Association will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

**WHEREFORE,** the Association demands trial by jury and judgment against CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT III
## BREACH OF FLORIDA BUILDING CODE
*(THE ASSOCIATION v. CORPORATE DEFENDANTS in Their Capacity as Developers)*

18

81.    The Association adopts and re-alleges paragraphs 1-66 above.

82.    The Association brings this claim against the respective CORPORATE DEFENDANTS for those Homes on which they served as Developer(s).

83.    The Homes were required to be built in accordance with the Code.

84.    CORPORATE DEFENDANTS respectively served as the developer and designer for the construction of certain of the Homes, and thus had a responsibility not to commit violations of the Code.

85.    CORPORATE DEFENDANTS actively participated in and were responsible for constructing certain of the Homes, and therefore owed to the Association, its members, and future foreseeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

86.    CORPORATE DEFENDANTS actively participated in the construction of the Homes in their capacity as developer(s); directly supervised and influenced the manner in which all of the work was performed; and/or negligently created and/or negligently approved the Stucco Deficiencies. As a result, CORPORATE DEFENDANTS committed violations of the Florida Building Code, violating § 553.84, Florida Statutes.

87.    CORPORATE DEFENDANTS knew or should have known that the building code violations existed.

88.    As a direct and proximate result of CORPORATE DEFENDANTS' violations of §553.84 Fla. Stat., the Association and its members (including the Homeowners) will be required to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, including, but not limited to, those conditions described herein, and to repair the building code violations. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

**WHEREFORE**, the Association demands trial by jury and judgment against CORPORATE DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT IV
## BREACH OF FLORIDA BUILDING CODE
*(THE ASSOCIATION v. CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS in their Capacity as General Contractors and Qualifiers, Respectively)*

89.     The Association adopts and re-alleges paragraphs 1-66 above.

90.     The Association brings this claim against CORPORATE DEFENDANTS and their respective INDIVIDUAL DEFENDANTS for those Homes on which they served as the general contractor(s) and/or primary qualifiers.

91.     The Homes were required to be built in accordance with the Code.

92.     CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for the construction of certain of the Homes, and thus had a responsibility not to commit violations of the Code.

93.     As the party responsible for obtaining and pulling the permits for the construction of certain of the Homes, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS owed to the Association, its members, and future foreseeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

94.     CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS actively participated in the construction of the Homes in their capacity as general contractor(s) and/or primary qualifier(s); directly supervised and influenced the manner in which all of the work was

20

performed; pulled required permits; and/or negligently created and/or negligently approved the Stucco Deficiencies. As a result, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS committed violations of the Florida Building Code, violating § 553.84, Florida Statutes.

95.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS knew or should have known that the building code violations existed.

96.    As a direct and proximate result of CORPORATE DEFENDANTS' and INDIVIDUAL DEFENDANTS' violations of § 553.84, Florida Statutes, the Association and its members (including the Homeowners) will be required to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, including, but not limited to, those conditions described herein, and to repair the building code violations. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

**WHEREFORE,** the Association demands trial by jury and judgment against CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## <u>COUNT V</u>

## BREACH OF IMPLIED WARRANTIES
### *(THE ASSOCIATION v. CORPORATE DEFENDANTS)*

97.    The Association adopts and re-alleges paragraphs 1-66 above.

98.    As the developers and general contractors of the Homes, CORPORATE DEFENDANTS impliedly warranted to the Association that each parcel of the Homes was designed and constructed free from defect or deficiency in materials or workmanship in accordance with the plans and specifications filed as a matter of public record, the applicable building codes and all applicable local and national codes, ordinances and industry standards, and good design, engineering, and construction practices. These implied warranties are those generally described as implied warranties of fitness, merchantability, habitability, and/or workmanlike construction.

99.    The Association and its members relied upon the warranties, skill, and judgment from CORPORATE DEFENDANTS to ensure the condition of the Homes was free from defect or deficiency in materials or workmanship in accordance with the plans and specifications filed as a matter of public record, the applicable building codes, ordinances and industry standards, and good design, engineering, and construction practices; and free from water intrusion and related damages.

100.    CORPORATE DEFENDANTS breached the implied warranties by negligently constructing the Homes as set forth in paragraphs 39 and 59 above and for failing to remedy same.

101.    The defects and deficiencies alleged above have led to community-wide water intrusion damages and other damages to the Homes.

102.    As a proximate cause of CORPORATE DEFENDANTS' conduct and omissions, the Association and its members have and continue to suffer damages which include, without

22

limitation, the cost to repair the defects and deficiencies in the Homes, which are now and will continue to pose a threat to the health, safety, and welfare of the Association and its members, their guests, and the general public until such repairs are effectuated, as well as damages incident to, and consequences of CORPORATE DEFENDANTS' breach. Damages, in an amount to be determined at trial, are in excess of $15,000.00 and continuing.

103.    As a direct and proximate result of CORPORATE DEFENDANTS' breaches of the above-mentioned warranties, the Association, through assessment of its members, has expended and will be required to expend additional large sums of money to remedy the defects and deficiencies, and to pay consequential damages to or on behalf of its members.

104.    As a result of CORPORATE DEFENDANTS' breaches of the implied warranties, the Association has been compelled to retain the services of attorneys to comply with statutory requirements prior to litigation, to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE,** the Association demands judgment against CORPORATE DEFENDANTS for damages including, but not limited to, the cost of repairing the construction deficiencies, the resulting damages from the construction deficiencies, the incidental and consequential damages caused thereby, costs incurred in the prosecution of this lawsuit, pre-judgment interest, and trial by jury, and for any other relief the Court deems just and proper.

**COUNT VI**
**DECEPTIVE AND UNFAIR TRADE PRACTICES**
*(THE ASSOCIATION v. CORPORATE DEFENDANTS)*

105.    The Association adopts and re-alleges paragraphs 1-66 above.

106.    The Association and its members are consumers as that term is defined in § 501.203(7), Florida Statutes.

23

107.    CORPORATE DEFENDANTS were involved in "trade or commerce" at all times relevant herein as that term is defined in § 501.203(8), Florida Statutes, when constructing and selling the Homes and Common Areas of the Homes to the members of the Association.

108.    CORPORATE DEFENDANTS employed unfair or deceptive acts on purchasers in violation of Florida Statutes § 501.204(1), Florida Statutes, that were likely to mislead consumers, as follows:

      i.      Express and implied representations that the Homes and Homes' Common Areas were constructed in a good and workmanlike manner and in accordance with at least the minimum standards of the applicable building codes, when CORPORATE DEFENDANTS knew the Homes were in fact not;

      ii.      Directing and/or approving work performed by subcontractors that CORPORATE DEFENDANTS knew was in violation of the applicable building codes;

      iii.      Unfairly and wrongfully denying warranty repair requests on the basis of lack of homeowner maintenance when the issues with the Homes arose from CORPORATE DEFENDANTS' faulty construction, rather than lack of owner maintenance, and CORPORATE DEFENDANTS knew of same; and

      iv.      CORPORATE DEFENDANTS knew that it was wrongfully denying warranty repairs requests as it had the knowledge, experience, education and training to know that other communities built by CORPORATE DEFENDANTS have suffered similar damages and losses yet chose to

24

continue denying proper and timely warranty requests by owners of the
Homes.

109.    CORPORATE DEFENDANTS knew that the Homes and buildings throughout
the community suffered from construction deficiencies, water intrusion, construction performed
in violation of the applicable building codes, and other substantial defects that, if known, the
Association's members would not have purchased their Homes for the full purchase price, or
would not have purchased their Homes at all.

110.    CORPORATE DEFENDANTS negligently, recklessly, and/or intentionally
concealed the defects identified above.

111.    Furthermore, CORPORATE DEFENDANTS performed an unfair and deceptive
act by constructing the Homes without a general contractor's license. PULTE PURCHASING
CORPORATION and PULTEGROUP, INC. are not registered to do business in the state of
Florida, and are not qualified by a licensed general contractor in Florida; nonetheless, both
entities signed contracts with subcontractors to perform work related to constructing the Homes.

112.    The representations and concealments set forth above were in derogation of
Florida public policy as embodied in the Florida common law requiring sellers of real property to
disclose material defects not readily apparent to a buyer of real property.

113.    CORPORATE DEFENDANTS' actions as set forth herein and in paragraphs 39
and 59 above were done so in an effort to maximize profits; to place profits over the health,
welfare, and safety of its consumers; and to satisfy CORPORATE DEFENDANTS' corporate
greed and self-interest, as CORPORATE DEFENDANTS knew they would be unable to sell the
Homes to consumers had the substantial construction deficiencies been disclosed.

114.    Construction experts have discovered that the Homes and Common Areas at the Homes were not constructed in a good and workmanlike manner, not in accordance with at least the minimum standards of the applicable building codes and other industry standards, and are plagued by water intrusion and related damages.

115.    As a proximate cause of CORPORATE DEFENDANTS' deceptive and unfair trade practices, the Homes and common areas at the Homes have suffered actual damages by way of diminution in value in an amount to be determined at trial, which exceeds $15,000.00.

116.    As a result of CORPORATE DEFENDANTS' deceptive and unfair trade practices, the Association has been compelled to retain the services of legal counsel to comply with statutory requirements prior to litigation and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case, thus entitling the Association to an award of attorneys' fees and costs in amounts to be established at the time of trial.

**WHEREFORE,** the Association demands judgment against CORPORATE DEFENDANTS for diminution in value damages, actual damages, attorneys' fees, and costs pursuant to the Florida Deceptive & Unfair Trade Practices Act, and trial by jury. The Association prays for any other relief the Court deems just and proper.

**COUNT VII**
**NEGLIGENCE AND VICARIOUS LIABILITY**
*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANTS in Their Capacity as Developers)*

117.    Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-66 above.

118.    Homeowners, individually and as Class Representatives, bring this claim against the respective CORPORATE DEFENDANTS for Homes in which they served as the Developer(s).

119.    CORPORATE DEFENDANTS respectively served as the developer(s) for certain of the Homes. As such, CORPORATE DEFENDANTS were respectively responsible for all aspects of the construction of the Homes in which they served as the developer(s), including, but not limited to, exercising reasonable care in the design and construction of the Homes; and in ensuring their contractors and subcontractors constructed the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

120.    As the developers, CORPORATE DEFENDANTS had non-delegable duties to Homeowners to exercise reasonable care so that the Homes were constructed (a) in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations; and (b) so as to avoid damaging the Homes.

121.    CORPORATE DEFENDANTS breached their duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stucco Deficiencies, thereby necessitating repairs.

122.    As the developers for the subject project, CORPORATE DEFENDANTS are vicariously responsible for the negligent construction performed on the Homes by their contractors and subcontractors for those Homes on which the CORPORATE DEFENDANTS served as developers.

123.    As a direct and proximate result of CORPORATE DEFENDANTS' breach of the above-mentioned duties, Homeowners will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

**WHEREFORE**, Homeowners, Individually and as Class Representatives, demand trial by jury and judgment against CORPORATE DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT VIII
## NEGLIGENCE AND VICARIOUS LIABILITY
*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS in their Capacity as General Contractors and Qualifiers, Respectively)*

124.    Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-66 above.

125.    Homeowners, individually and as Class Representatives, bring this claim against CORPORATE DEFENDANTS and their respective INDIVIDUAL DEFENDANTS for those homes on which they served as the general contractors and/or primary qualifiers.

126.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for certain of the Homes and were responsible for all aspects of the construction of said Homes, including, but not limited to, exercising reasonable

care in designing and constructing the Homes; and in constructing and overseeing the construction of the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

127.    As general contractors and/or qualifiers, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS had non-delegable duties to the Homeowners to exercise reasonable care in constructing the Homes in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations and guidelines and in such a way so to not damage other property.

128.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS breached their duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stucco Deficiencies, thereby necessitating repairs.

129.    As the general contractors and/or qualifiers for the Homes, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS are vicariously responsible for the negligent construction performed by their subcontractors which worked on the Homes.

130.    As a direct and proximate result of CORPORATE DEFENDANTS' and INDIVIDUAL DEFENDANTS' breaches of the above-mentioned duties, Homeowners will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

**WHEREFORE**, Homeowners, individually and as Class Representatives, demand trial by jury and judgment against CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco

29

deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT IX
### BREACH OF FLORIDA BUILDING CODE
*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANTS in Their Capacity as Developers)*

131. Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-66 above.

132. Homeowners, individually and as Class Representatives, bring this claim against the respective CORPORATE DEFENDANTS for those homes on which they served as Developer(s).

133. The Homes were required to be built in accordance with the Code.

134. CORPORATE DEFENDANTS respectively served as the developer(s) and designer(s) for the construction of certain of the Homes, and thus had a responsibility not to commit violations of the Code.

135. As the entities and individuals actively participating in and responsible for constructing certain of the Homes, CORPORATE DEFENDANTS owed to Homeowners, its members, and future foreseeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

136. CORPORATE DEFENDANTS actively participated in the construction of the Homes in their capacity as developer(s); directly supervised and influenced the manner in which all of the work was performed; and/or negligently created and/or negligently approved the

Stucco Deficiencies. As a result, CORPORATE DEFENDANTS committed violations of the Florida Building Code, violating § 553.84, Florida Statutes.

137.    CORPORATE DEFENDANTS knew or should have known that the building code violations existed.

138.    As a direct and proximate result of CORPORATE DEFENDANTS' violations of § 553.84 Fla. Stat., the Homeowners will be required to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, including, but not limited to, those conditions described herein, and to repair the building code violations. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

WHEREFORE, Homeowners, Individually and as Class Representatives, demand trial by jury and judgment against CORPORATE DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT X
## BREACH OF FLORIDA BUILDING CODE
*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS in their Capacity as General Contractors and Qualifiers, Respectively)*

139.   Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-66 above.

140.   Homeowners, individually and as Class Representatives, bring this claim against CORPORATE DEFENDANTS and their respective INDIVIDUAL DEFENDANTS for those Homes on which they served as the general contractor(s) and/or primary qualifiers.

141.   The Homes were required to be built in accordance with the Code.

142.   CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for the construction of certain of the Homes, and thus had a responsibility not to commit violations of the Code.

143.   As the party responsible for obtaining and pulling the permits for the construction of certain of the Homes, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS owed to Homeowners and future foreseeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

144.   CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS actively participated in the construction of the Homes in their capacity as general contractor(s) and/or primary qualifier(s); directly supervised and influenced the manner in which all of the work was performed; pulled required permits; and/or negligently created and/or negligently approved the Stucco Deficiencies. As a result, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS committed violations of the Florida Building Code, violating § 553.84, Florida Statutes.

145.   CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS knew or should have known that the building code violations existed.

146.    As a direct and proximate result of CORPORATE DEFENDANTS' and INDIVIDUAL DEFENDANTS' violations of § 553.84, Fla. Stat., Homeowners will be required to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, including, but not limited to, those conditions described herein, and to repair the building code violations. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

WHEREFORE, Homeowners, individually and as Class Representatives, demand trial by jury and judgment against CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT XI
## BREACH OF IMPLIED WARRANTIES
*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANTS)*

147.    Homeowners adopt and re-allege paragraphs 1-66 above.

148.    As the developers and general contractors of the Homes, CORPORATE DEFENDANTS impliedly warranted to Homeowners that each of the Homes was designed and constructed free from defect or deficiency in materials or workmanship in accordance with the plans and specifications filed as a matter of public record, the applicable building codes and all applicable local and national codes, ordinances and industry standards, and good design, engineering, and construction practices. These implied warranties are those generally described as implied warranties of fitness, merchantability, habitability, and/or workmanlike construction.

149.    Homeowners relied upon the warranties, skill, and judgment from CORPORATE DEFENDANTS to ensure the condition of the Homes was free from defect or deficiency in materials or workmanship in accordance with the plans and specifications filed as a matter of public record, the applicable building codes, ordinances and industry standards, and good design, engineering, and construction practices; and free from water intrusion and related damages.

150.    CORPORATE DEFENDANTS breached the implied warranties by negligently constructing the Homes as set forth in paragraphs 39 and 59 above and for failing to remedy same.

151.    The aggregate effect of the defects and deficiencies set forth above has led to community-wide water intrusion damages and other damages.

152.    As a proximate cause of CORPORATE DEFENDANTS' conduct and omissions, Homeowners have and continue to suffer damages which include, without limitation, the cost to repair the defects and deficiencies in the Homes, which are now and will continue to pose a threat to the health, safety, and welfare of the Association and its members, their guests, and the general public until such repairs are effectuated, as well as damages incident to, and consequences of CORPORATE DEFENDANTS' breach. Damages, in an amount to be determined at trial, are in excess of $15,000.00 and continuing.

153.    As a direct and proximate result of CORPORATE DEFENDANTS' breaches of the above-mentioned warranties, Homeowners have expended and will be required to expend additional large sums of money to remedy the defects and deficiencies, and to pay consequential damages to or on behalf of its members.

154.    As a result of CORPORATE DEFENDANTS' breaches of the implied warranties, Homeowners have been compelled to retain the services of attorneys to comply with statutory

requirements prior to litigation, to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE,** Homeowners demand judgment against CORPORATE DEFENDANTS for damages including, but not limited to, the cost of repairing the construction deficiencies, the resulting damages from the construction deficiencies, the incidental and consequential damages caused thereby, costs incurred in the prosecution of this lawsuit, pre-judgment interest, and trial by jury, and for any other relief the Court deems just and proper.

**COUNT XII**
**DECEPTIVE AND UNFAIR TRADE PRACTICES**
*(HOMEOWNERS v. CORPORATE DEFENDANTS)*

155. Homeowners adopt and re-allege paragraphs 1-66 above.

156. Homeowners are consumers as that term is defined in § 501.203(7), Florida Statutes.

157. CORPORATE DEFENDANTS were involved in "trade or commerce" at all times relevant herein as that term is defined in § 501.203(8), Florida Statutes, when constructing and selling the Homes and Common Areas of the Homes to the members of the Association.

158. CORPORATE DEFENDANTS employed unfair or deceptive acts on purchasers in violation of Florida Statutes § 501.204(1), Florida Statutes, that were likely to mislead consumers. This included the following:

    i. Express and implied representations that the Homes and Homes' Common Areas were constructed in a good and workmanlike manner and in accordance with at least the minimum standards of the applicable building codes, when CORPORATE DEFENDANTS knew the Homes were in fact not;

35

    ii.    Directing and/or approving work performed by subcontractors that CORPORATE DEFENDANTS knew was in violation of the applicable building codes;

    iii.    Unfairly and wrongfully denying warranty repair requests on the basis of lack of homeowner maintenance when the issues with the Homes arose from CORPORATE DEFENDANTS' faulty construction, rather than lack of owner maintenance and CORPORATE DEFENDANTS knew of same; and

    iv.    CORPORATE DEFENDANTS knew that it was wrongfully denying warranty repairs requests as it had the knowledge, experience, education and training to know that other communities built by CORPORATE DEFENDANTS have suffered similar damages and losses yet chose to continue denying proper and timely warranty requests by owners of the Homes.

159.    CORPORATE DEFENDANTS knew that the buildings throughout the Homes suffered from construction deficiencies, water intrusion, construction performed in violation of the applicable building codes, and other substantial defects that, if known, the Association's members would not have purchased their Homes for the full purchase price, or would not have purchased their Homes at all.

160.    CORPORATE DEFENDANTS negligently, recklessly, and/or intentionally concealed the defects identified above.

161.    Furthermore, CORPORATE DEFENDANTS performed an unfair and deceptive act by constructing the Homes without a general contractor's license. PULTE PURCHASING

CORPORATION and PULTEGROUP, INC. are not registered to do business in the state of Florida and are not qualified by a licensed general contractor in Florida; nonetheless, both entities signed contracts with subcontractors to perform work related to constructing the Homes.

162.    The representations and concealments set forth above were in derogation of Florida public policy as embodied in the Florida common law requiring sellers of real property to disclose material defects not readily apparent to a buyer of real property.

163.    CORPORATE DEFENDANTS' actions as set forth herein and in paragraphs 39 and 59 above were done so in an effort to maximize profits; to place profits over the health, welfare, and safety of its consumers; and to satisfy CORPORATE DEFENDANTS' corporate greed and self-interest, as CORPORATE DEFENDANTS knew they would be unable to sell the Homes to consumers had the substantial construction deficiencies been disclosed.

164.    Construction experts have discovered that the Homes and Common Areas at the Homes were not constructed in a good and workmanlike manner and not in accordance with at least the minimum standards of the applicable building codes and other industry standards, and are plagued by water intrusion and related damages.

165.    As a proximate cause of CORPORATE DEFENDANTS' deceptive and unfair trade practices, the Homes and common areas at the Homes have suffered actual damages by way of diminution in value in an amount to be determined at trial, which exceeds $15,000.00.

166.    As a result of CORPORATE DEFENDANTS' deceptive and unfair trade practices, the Association and Homeowners have been compelled to retain the services of legal counsel to comply with statutory requirements prior to litigation and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to

prove its case, thus entitling the Association and Homeowners to an award of attorneys' fees and costs in amounts to be established at the time of trial.

WHEREFORE, Homeowners demand judgment against CORPORATE DEFENDANTS for diminution in value damages, actual damages, attorneys' fees, and costs pursuant to the Florida Deceptive & Unfair Trade Practices Act, and trial by jury. Homeowners pray for any other relief the Court deems just and proper.

DATED: April 18, 2018.

> **BALL JANIK LLP**
>
> By:  _/s/ Evan Small, Esquire_
>   **Phillip E. Joseph**, FL No. 1000368
>   **Evan J. Small**, FL No. 57306
>   **John W. Windle**, FL No. 125169
>   201 E Pine Street, Suite 600
>   Orlando, FL 32801
>   Telephone:  (407) 455-5664
>   Facsimile:   (407) 902-2105
>   E-Mail:   pjoseph@balljanik.com
>         esmall@balljanik.com
>         jwindle@balljanik.com
>
> _Counsel    for    EMERSON    PARK HOMEOWNERS ASSOCIATION, INC._