UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EMERSON PARK HOMEOWNERS
ASSOCIATION, INC., GHAZI ALRIFAI,
SOUHA KAZMA; JOVAN BROWN;
AUDRA WOOD; HECTOR DUARTE;
MARITZA LOPEZ; RHEA EDWARDS;
WADE EDWARDS; LISSEIDY GARCIA;
MARCELO GARCIA; CLARE LEE and
KATHLEEN GARNER; ADAM JACKSON;
DANAE JACKSON; JUSTIN JACKSON;
TRACI DAVIS; ANITA MARTIN; TRAVIS
MARTIN; JOHNATHAN MCGRIFF;                    Case No: 6:18-cv-913-Orl-37DCI
DAVID MEJIAS VILLEGAS; JULIANA
BUSCH; ROBERT NAFFZIGER; DEANNA
NAFFZIGER; EDGARD ORTIZ; ROSE
REYES; JAMES REYES; TERRA
SIMON,GREGORY BOYD, KYRA
BROWN, TONY BROWN, AYODELE
JINADU, BENJAMIN STANLEY, and LEE
ANN STANLEY, on behalf of themselves and
all others similarly situated,
    Plaintiffs,
v.

CENTEX HOMES; BRETT LUNDEQUAM;
DAVID GUDE; JAMES YOUNG; JAMES
STEWART and PATRICK KNIGHT,
    Defendants.

## PLAINTIFFS' AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs EMERSON PARK HOMEOWNERS ASSOCIATION, INC., in its own

right and on behalf of all members of this Association pursuant to Fla. R. Civ. P. 1.221 ("As-

sociation"), GHAZI ALRIFAI and SOUHA KAZMA; JOVAN BROWN and AUDRA

WOOD; HECTOR DUARTE and MARITZA LOPEZ; RHEA and WADE EDWARDS;

LISSEIDY and MARCELO GARCIA; CLARE LEE and KATHLEEN GARNER; ADAM

and DANAE JACKSON; JUSTIN JACKSON and TRACI DAVIS; ANITA and TRAVIS

MARTIN; JOHNATHAN MCGRIFF; DAVID MEJIAS VILLEGAS and JULIANA
BUSCH; ROBERT NAFFZIGER and DEANNA NAFFZIGER; EDGARD ORTIZ; ROSE;
JAMES REYES; TERRA SIMON, GREGORY BOYD, KYRA BROWN, TONY BROWN,
AYODELE JINADU, BENJAMIN STANLEY, and LEE ANN STANLEY (collectively,
"Homeowners")[1] individually and as the appropriate class representatives of all members of
the Association who own single-family homes constructed by the defendants, by and through
undersigned counsel, hereby sue the following defendants and seek trial by jury: CENTEX
HOMES, a Nevada general partnership; BRETT LUNDEQUAM; DAVID GUDE; JAMES
YOUNG; JAMES STEWART; and PATRICK KNIGHT (collectively, "DEFENDANTS").
In support thereof, the Association and Homeowners allege as follows:

**NATURE OF THE CASE**

1.      This is an action for damages arising from the negligent and defective devel-
opment, design, construction and sale of the approximately 137 single-family homes in the
Emerson Park subdivision located in Orange County, Florida, that DEFENDANTS designed,
developed, constructed, and built (collectively, the "Homes").[2]

2.      The Association brings this action in its own right and on behalf of the Asso-
ciation's members, pursuant to Fla. R. Civ. P. 1.221. Alternatively, Homeowners assert
claims, both on their own behalf and as class representatives (pursuant to Fla. R. Civ.
P. 1.220) for all members of the Association who own Homes which DEFENDANTS con-
structed in the Emerson Park subdivision.

---

[1] The list of Homeowners' full names and addresses are set forth on attached Exhibit A.

[2] Since filing the original complaint, Plaintiffs have determined that there are 145 homes
built by Defendants in the Emerson Park subdivision.

## JURISDICTION AND VENUE

3.      This is an action for monetary damages in excess of $15,000.00, exclusive of interest, costs, and attorney's fees, and this Court otherwise has jurisdiction over the subject matter hereof.

4.      The Homes which are the subject of this action are located in Orange County, Florida.

5.      The Association has an office for the transaction of its usual and customary business in Orange County, Florida.

6.      Homeowners reside in Orange County, Florida, and/or own one or more of the Homes located in Orange County.

7.      At all times material, DEFENDANTS conducted business or resided in Orange County, Florida.

8.      The acts and/or omissions giving rise to this complaint took place in Orange County, and each cause of action occurred in Orange County, Florida. Therefore, jurisdiction and venue are proper in this County.

9.      All conditions precedent to bringing this action have occurred or have been waived, including, but not limited to, the requirements of Chapter 558, Florida Statutes.

10.     The alleged defects herein have been examined and certified by an appropriately licensed Florida engineer, design professional, contractor or otherwise licensed Florida individual or entity.

## PARTIES

11.     The Association is a corporation organized and existing under Chapter 720 of the Florida Statutes to provide a corporate entity, pursuant to § 720.302, Florida Statutes, for the operation and management of the Homes. The Association asserts claims on behalf of all of Homeowners, pursuant to its governing documents and Fla. R. Civ. P. 1.221.

12.     Homeowners are the lawful fee-simple owners of certain of the Homes identified in Exhibit A. Homeowners bring their individual claims and are the appropriate representatives of the class of owners of all Homes in the Emerson Park subdivision, which DEFENDANTS constructed and/or sold and which suffer from negligent and defective construction.

13.     Upon information and belief, defendant CENTEX HOMES ("CORPORATE DEFENDANT"), is a Nevada general partnership authorized to do business in Florida, and it is a citizen of Michigan and Georgia.

14.     Upon information and belief, defendant CENTEX HOMES served as the developer and general contractor, as that term is defined in § 489.105(3)(a), Fla. Stat., for the construction of the Homes.

15.     Upon information and belief, defendant BRETT LUNDEQUAM d/b/a Lundequam Development LLC ("LUNDEQUAM") is an individual resident of Florida licensed as a Certified General Contractor in Florida, with his principal address located at 213 W. Comstock Avenue, Winter Park, Florida 32789.

16.     Upon information and belief, LUNDEQUAM served as a general contractor and/or primary qualifying agent (as those terms are defined in §489.105(3)(a) and §489.105(4), Fla. Stat.) for CORPORATE DEFENDANT for certain Homes.

17.     Upon information and belief, defendant DAVID GUDE ("GUDE") is an individual resident of Florida licensed as a Certified General Contractor in Florida, with his principal address located at 16143 Jessamine Road, Dade City, Florida 33523.

18.     Upon information and belief, GUDE served as a general contractor and/or primary qualifying agent (as those terms are defined in §489.105(3)(a) and §489.105(4), Florida Statutes) for CORPORATE DEFENDANT for certain Homes.

19.     Upon information and belief, defendant JAMES YOUNG ("YOUNG") is an individual resident of Florida licensed as a Certified General Contractor in Florida, with his principal address located at 9813 Waters Meet Drive, Tallahassee, Florida 32312.

20.     Upon information and belief, YOUNG served as a general contractor and/or primary qualifying agent (as those terms are defined in §489.105(3)(a) and §489.105(4), Florida Statutes) for CORPORATE DEFENDANT for certain Homes.

21.     Upon information and belief, defendant JAMES STEWART d/b/a CENTEX HOMES ("STEWART") is an individual resident of Florida licensed as a Certified General Contractor in Florida, with his principal address located at 24311 Walden Center Drive Suite 300, Bonita Springs, Florida 34134.

22.     Upon information and belief, STEWART served as a general contractor and/or primary qualifying agent (as those terms are defined in §489.105(3)(a) and §489.105(4), Florida Statutes) for CORPORATE DEFENDANT for certain Homes.

23.     Upon information and belief, defendant PATRICK KNIGHT d/b/a SYDGAN CORPORATION ("KNIGHT") is an individual resident of Florida licensed as a Certified General Contractor in Florida, with his principal address located at 1900 East Adams Drive, Maitland, Florida 32751.

24.     Upon information and belief, KNIGHT served as a general contractor and/or primary qualifying agent (as those terms are defined in §489.105(3)(a) and §489.105(4), Florida Statutes) for CORPORATE DEFENDANT for certain Homes.

25.     The Defendants identified in paragraphs 15-24 above are collectively referred to herein as the "INDIVIDUAL DEFENDANTS."

26.     As a result of the INDIVIDUAL DEFENDANTS' and CORPORATE DE-FENDANT's conduct, the Association and Homeowners have been required to retain the

services of the undersigned counsel to represent their interests in this action and are obligated to pay a reasonable fee for the services.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF: STUCCO DEFECTS PRESENT**

27.   The exterior(s) of the Homes are all constructed with Stucco.

28.   The first floor of all Homes is similarly constructed with Stucco applied directly over masonry walls.

29.   The second floor of all Homes is similarly constructed with Stucco attached to lath applied over building wrap attached to wood sheathing.

30.   The governing building code for the construction of all Homes is the 2004 Florida Building Code (the "Code).

31.   The defects and deficiencies in the Stucco are substantially similar for all Homes, uniformly plague all Homes, and require the same remediation and repair for all Homes.

32.   The Stucco defects and deficiencies include, but are not limited to, the following:

   i. Excessively cracked stucco in violation of the 2004 Florida Residential Code ("FRC") FRC: R703.6.1, the standards prescribed by the American Society for Testing and Materials ("ASTM") ASTM C926: 5.2.1, and/or the prevailing local industry standard;

   ii. Insufficient length of wire lath staples in violation of FRC: R703.6.2, ASTM C1069: 7.10.2.2., and/or the prevailing local industry standard;

   iii. Poor embedment of lath into plaster in violation of FRC: R703.6.1, ASTM C926: 7.2.1, and/or the prevailing local industry standard;

   iv. Staples installed through window flashing in violation of FRC: R703.1 and/or the prevailing local industry standard;

v.    Stucco paper backing not integrated with window flashing at sill in violation of FRC: R703.1 and/or the prevailing local industry standard; and,

vi.    Improper stucco plaster installation in violation of FRC: R703.6.1, ASTM 926: 7.1.6, and/or the prevailing local industry standard.

33.    The deficiencies identified in paragraph 32 above are collectively referred to herein as the "Stucco Deficiencies."

### FACTS COMMON TO THE ASSOCIATION'S CLAIMS FOR RELIEF

34.    The Association's members are collectively the fee-simple owners of the Homes and the real property which comprise the Emerson Park community.

35.    Upon information and belief, CORPORATE DEFENDANT controlled the Association until turnover.

36.    The Stucco Deficiencies and other defects have caused excessive and unsightly cracking of the cement plaster; cracking and discoloration of the paint; excessive and unsightly discoloration of the exterior walls of the Homes due to water intrusion; and significant deterioration of the exterior walls of all Homes, in violation of the Association's Maintenance and Repair Duties for which the Association has the right and power to repair. Titled "Maintenance and Repair," Article V of the Declaration for the Association sets forth regulations that are "necessary to maintain the property to a level consistent with the Community-Wide Standard" of the Homes throughout the community, and imposes this requirement on all members of the Association regarding the aesthetics, maintenance, and repair of the exterior of their Homes, including the Stucco. Article IV of the Declaration, titled "Architecture and Landscaping," provides that the Association has the right and power to review and approve any and all changes to the exterior of the Homes to enforce the quality of the work and the uniformity of the community, and to maintain minimum aesthetic guidelines.

Article V of the Declaration also requires members to maintain the exterior surfaces and structures of Homes in accordance with all applicable laws, rules, or regulations, including the Code and industry standards.

37.     Importantly, Article VII, titled "Association Powers and Responsibilities," provides that the Association has the rights and powers to enforce the provisions of the Declaration. These rights and powers to enforce the Declaration include the enforcement of provisions of Articles IV and V, including maintaining or repairing the Homes at the Homeowner's cost.

38.     The Stucco Deficiencies are so substantial and so consistently and uniformly plague all Homes that it is impractical and/or impossible for the owners of the Homes to meet the requirements of Articles V and VI in the Declaration, and for the Association to enforce them.

39.     The causes of the action alleged herein concern matters of common interest. Pursuant to Fla. R. Civ. P. 1.112, the Association is therefore the lawful, adequate, and appropriate representative to seek redress for the Stucco Deficiencies in the Homes.

40.     Even in the absence of the Declaration, the Stucco Deficiencies are of such a substantial nature that they consistently and uniformly plague all of the Homes and thus affect matters of common interest. Accordingly, pursuant to Fla. R. Civ. P. 1.221, the Association again is the lawful, adequate, and appropriate representative to seek redress for the Stucco Deficiencies.

## CLASS REPRESENTATION ALLEGATIONS

41.     Pursuant to Fla. R. Civ. P. 1.220(b)(1)(A); or, alternatively, Fla. R. Civ. P. 1.220(b)(1)(B); or, alternatively, Fla. R. Civ. P. 1.220(b)(3), the Homeowners bring their direct claims and also serve as the appropriate class representatives of the approximately 137 owners of the Homes which all suffer from the same Stucco Deficiencies.

42.     Homeowners are the appropriate class representative(s) of the proposed class, to be defined as follows:

> **The Emerson Park Centex Community Class**: All current owners of the Homes in the Emerson Park residential development in Apopka, Florida, (a) which DEFEND-ANTS designed, developed, constructed, built, and/or sold; (b) with claims that are not otherwise barred; and (c) which have the Stucco Deficiencies defined in para-graph 32 above.

43.     Pursuant to Fla. R. Civ. P. 1.220(b)(1)(A); Fla. R. Civ. P. 1.220(b)(1)(B); and/or Fla. R. Civ. P. 1.220(b)(3), a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Additionally, the questions of law or fact common to the claim of the Association and Homeowners predominate over any question of law or fact affecting only individual members of the class as follows:

i.      All original purchasers of the Homes entered into substantially similar sales contracts with DEFENDANTS.

ii.     The Homes were all to be constructed in accordance with the same Code, building standards, and minimum requirements.

iii.    The Homes all have a substantially similar design.

iv.     The Homes were all constructed using a substantially similar set of plans and specifications.

v.      The Stucco on the Homes utilized the same construction design, means, meth-ods, and materials.

vi.     The Stucco Deficiencies are substantially similar for all Homes regardless of home type, elevation, weather exposure, or date of construction, and require the same or similar repair. There exists a common question of fact as to whether DEFENDANTS' improper design, development, construction of the

substantially similar Homes caused the substantially similar Stucco Deficien-

cies present at the Homes.

vii.     Specifically, the Association undertook an investigation, which included de-

structive testing and visual inspection of the Homes, and which revealed the

following:

(1)     All Homes have consistent stucco cracking patterns;

(2)     All Homes have excessive cracking in similar locations;

(3)     The stucco cracking patterns and locations were caused by the Stucco

Deficiencies; and

(4)     The breadth, nature, and consistency of the Stucco Deficiencies re-

quires removal and replacement of all stucco on the Homes, regardless

of home type or elevation.

44.     Homeowners are the appropriate lead Plaintiffs as their claims are typical of

the other plaintiffs in the putative class, as follows:

i.     The other members of the class would bring the same causes of action to re-

cover damages for the stucco deficiencies present at the Homes in the Emer-

son Park community.

ii.     Homeowners and the rest of the putative class reside in the same community

and are subject to the same Declaration and same covenants running with the

land.

iii.     Homeowners and the rest of the putative class have the same interest in recov-

ering damages to remediate the common Stucco Deficiencies present at the

Homes in the Emerson Parks community.

45.     Homeowners will fairly and adequately protect and represent the interests of

each member of the class, as follows:

    i.    Homeowners are competent to lead the Class and have not been convicted of any crimes related to dishonesty; and,

    ii.    Homeowners are not antagonistic to any other members of the Class.

46.    Class adjudication is the superior form for this controversy, as evidenced by the following:

    i.    The facts and allegations pled in paragraphs 32 and 41 – 45 above;

    ii.    The numerous related but separate lawsuits that would need to be filed by Homeowners.

    iii.    The forum of Orange County is ideal for all class members because, by definition, all properties involved are located in Orange County; and

    iv.    As a practical matter, it will be extremely burdensome on the Orange County Court, and its pool of jurors, to conduct dozens (if not hundreds) of separate jury trials regarding the substantially similar actions, resulting defect, resulting property damage, and law.

## FACTS COMMON TO ALL CLAIMS

47.    The Association and its members (the Homeowners) are collectively the fee-simple owners of the Homes and the real property which comprise the community.

48.    Upon information and belief, CORPORATE DEFENDANT controlled the Association until turnover.

49.    The causes of action alleged herein concern matters of common interest to the owners of the Homes and the Association's members, including, but not limited to, matters affecting the exterior walls, roofs, and windows of the Homes.

50.    DEFENDANTS undertook to construct the Homes for sale to, and use of, the general public, including the Association, its members, and their predecessors in interest.

51.     In so doing, DEFENDANTS failed to reasonably and adequately construct the Homes by failing to design, develop, and/or construct the Homes in accordance with the Florida Building Code, manufacturers' guidelines and recommendations, permitted plans and specifications, and the standards in the industry.

52.     The Association has discovered systemic construction defects related to the development, design, and construction of the Homes that include, but are not limited, to the following:

    i.    Excessively cracked stucco in violation of the 2004 Florida Residential Code ("FRC") FRC: R703.6.1, the standards prescribed by the American Society for Testing and Materials ("ASTM") ASTM C926: 5.2.1, and/or the prevailing local industry standard;

    ii.    Insufficient length of wire lath staples in violation of FRC: R703.6.2, ASTM C1069: 7.10.2.2., and/or the prevailing local industry standard;

    iii.    Poor embedment of lath into plaster in violation of FRC: R703.6.1, ASTM C926: 7.2.1, and/or the prevailing local industry standard;

    iv.    Staples installed through window flashing in violation of FRC: R703.1 and/or the prevailing local industry standard;

    v.    Stucco paper backing not integrated with window flashing at sill in violation of FRC: R703.1 and/or the prevailing local industry standard; and,

    vi.    Improper stucco plaster installation in violation of FRC: R703.6.1, ASTM 926: 7.1.6, and/or the prevailing local industry standard.

53.     As a direct result of the collective and individual failures on the part of DEFENDANTS, the Association and its members have suffered and continue to suffer damages proximately caused by defects and deficiencies in the construction of the Homes.

1160876\v5

54.     The defects and deficiencies were not readily discoverable by the Association or its members through reasonable inspection at the time of purchase, and the Association and its members became aware of the defects and deficiencies only after inspections performed by expert consultants following turnover.

55.     In compliance with § 558.004, Florida Statutes, the Association has served upon DEFENDANTS written notices (the "558 Notices") including statements that the notice was being given to satisfy the requirements of Chapter 558, Florida Statutes, and specifying in reasonable detail the common defects and damages and injuries to the Homes that is the subject of the claims, and describing in reasonable detail the common causes of the common defects to the extent known, the nature and extent of the damages and injuries resulting from the defects to the extent known, and the location of each defect to the extent known. A Florida certified design professional and/or engineer has examined and certified the defects as alleged in the 558 Notices and in paragraphs 32 and 52.

56.     The notices were sent on behalf of the Association, in its own right and on behalf of all members of the Association, and in accordance with the scope of its duties pursuant to Chapter 720, Florida Statutes.

57.     Since turnover, the Association has performed, and will continue to perform, routine maintenance within the Emerson Park community.

58.     Cumulatively, the conditions described in paragraphs 32 and 52 have resulted in damage to the Homes, including, but not limited to water penetration that has caused damage to other property, including, but not limited to, work performed by other trades, interior finishes, and damage to others' personal property for which the Association has been and will continue to be responsible.

59.     Extensive rehabilitation and repair is necessary to repair the damage caused by the deficiencies identified in paragraphs 32 and 52 and/or to reinstate the above system

assemblies so that they conform to the applicable code(s), meet reasonable and expected per-formance standards, and comply with the permitted plans and specifications.

## COUNT I

## NEGLIGENCE AND VICARIOUS LIABILITY

*(THE ASSOCIATION v. CORPORATE DEFENDANT in its Capacity as Developer)*

60.     The Association adopts and re-alleges paragraphs 1-59 above.

61.     The Association brings this claim against the CORPORATE DEFENDANT for Homes in which it served as the Developer.

62.     CORPORATE DEFENDANT served as the developer for the Homes. As such, CORPORATE DEFENDANT was responsible for all aspects of the construction of the Homes, including, but not limited to, exercising reasonable care in the design and construc-tion of the Homes; and in ensuring that its contractors and subcontractors constructed the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

63.     As the developer, CORPORATE DEFENDANT had non-delegable duties to the Association and its members to exercise reasonable care so that the Homes were con-structed (a) in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations; and (b) so as to avoid dam-aging the Homes.

64.     CORPORATE DEFENDANT breached its duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stuc-co Deficiencies, thereby necessitating repairs.

65.     As the developer for the subject project, CORPORATE DEFENDANT is vi-cariously responsible for the negligent construction performed on the Homes by its contrac-tors and subcontractors .

66.     As a direct and proximate result of CORPORATE DEFENDANT's breach of the above-mentioned duties, the Association and members of the Association will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

WHEREFORE, the Association demands trial by jury and judgment against COR-PORATE DEFENDANT for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT II

## NEGLIGENCE AND VICARIOUS LIABILITY

*(THE ASSOCIATION v. CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS in their Capacity as General Contractors and Qualifiers, Respectively)*

67.     The Association adopts and re-alleges paragraphs 1-66 above.

68.     The Association brings this claim against CORPORATE DEFENDANT and its respective INDIVIDUAL DEFENDANTS for those Homes on which they served as the general contractors and/or primary qualifiers.

69.     CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for certain of the Homes and were responsible for all aspects of the construction of said Homes, including, but not limited to, exercising reasonable care in designing and constructing the Homes; and in constructing and overseeing the construction of the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

70.     As general contractors and/or qualifiers, CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS had non-delegable duties to the Association, the Homeowners, and all Association members to exercise reasonable care in constructing the Homes in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations and guidelines, and in such a way so to not damage other property.

71.     CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS breached their duties by negligently constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stucco Deficiencies, thereby necessitating repairs.

72.     As the general contractors and/or qualifiers for the subject project, CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS are vicariously responsible for the negligent construction performed by their subcontractors which worked on the Homes.

73.     As a direct and proximate result of CORPORATE DEFENDANT's and INDIVIDUAL DEFENDANTS' breach of the above-mentioned duties, the Association and members of the Association will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

WHEREFORE, the Association demands trial by jury and judgment against CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

**COUNT III**

**BREACH OF FLORIDA BUILDING CODE**

*(THE ASSOCIATION v. CORPORATE DEFENDANT in its Capacity as Developer)*

74.     The Association adopts and re-alleges paragraphs 1-73 above.

75.     The Association brings this claim against the CORPORATE DEFENDANT for the Homes, on which it served as Developer.

76.     The Homes were required to be built in accordance with the Code.

77.     CORPORATE DEFENDANT served as the developer and designer for the construction of the Homes, and thus had a responsibility not to commit violations of the Code.

78.     CORPORATE DEFENDANT actively participated in and was responsible for constructing the Homes, and therefore owed to the Association, its members, and future fore-seeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

79.     CORPORATE DEFENDANT actively participated in the construction of the Homes in its capacity as developer; directly supervised and influenced the manner in which all of the work was performed; and/or negligently created and/or negligently approved the Stucco Deficiencies. As a result, CORPORATE DEFENDANT committed violations of the Florida Building Code, violating § 553.84, Florida Statutes.

80.     CORPORATE DEFENDANT knew or should have known that the building code violations existed.

81.     As a direct and proximate result of CORPORATE DEFENDANT's violations of §553.84 Fla. Stat., the Association and its members (including the Homeowners) will be required to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, including, but not limited to, those conditions

described herein, and to repair the building code violations. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

WHEREFORE, the Association demands trial by jury and judgment against COR-PORATE DEFENDANT for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT IV

## BREACH OF FLORIDA BUILDING CODE

*(THE ASSOCIATION v. CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS in their Capacity as General Contractors and Qualifiers, Respectively)*

82.    The Association adopts and re-alleges paragraphs 1-81 above.

83.    The Association brings this claim against CORPORATE DEFENDANT and its respective INDIVIDUAL DEFENDANTS for those Homes on which they served as the general contractor(s) and/or primary qualifiers.

84.    The Homes were required to be built in accordance with the Code.

85.    CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for the construction of certain of the Homes, and thus had a responsibility not to commit violations of the Code.

86.    As the party responsible for obtaining and pulling the permits for the construction of certain of the Homes, CORPORATE DEFENDANT and INDIVIDUAL DEFEND-ANTS owed to the Association, its members, and future foreseeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

87.     CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS actively participated in the construction of the Homes in their capacity as general contractor(s) and/or primary qualifier(s); directly supervised and influenced the manner in which all of the work was performed; pulled required permits; and/or negligently created and/or negligently approved the Stucco Deficiencies. As a result, CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS committed violations of the Florida Building Code, violating § 553.84, Florida Statutes.

88.     CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS knew or should have known that the building code violations existed.

89.     As a direct and proximate result of CORPORATE DEFENDANT's and INDIVIDUAL DEFENDANTS' violations of § 553.84, Florida Statutes, the Association and its members (including the Homeowners) will be required to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, including, but not limited to, those conditions described herein, and to repair the building code violations. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

WHEREFORE, the Association demands trial by jury and judgment against CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT V

## BREACH OF IMPLIED WARRANTIES

*(THE ASSOCIATION v. CORPORATE DEFENDANT)*

90.    The Association adopts and re-alleges paragraphs 1-89 above.

91.    As the developer and general contractor of the Homes, CORPORATE DE-
FENDANT impliedly warranted to the Association that each parcel of the Homes was de-
signed and constructed free from defect or deficiency in materials or workmanship in accord-
ance with the plans and specifications filed as a matter of public record, the applicable build-
ing codes and all applicable local and national codes, ordinances and industry standards, and
good design, engineering, and construction practices. These implied warranties are those
generally described as implied warranties of fitness, merchantability, habitability, and/or
workmanlike construction.

92.    The Association and its members relied upon the warranties, skill, and judg-
ment from CORPORATE DEFENDANT to ensure the condition of the Homes was free from
defect or deficiency in materials or workmanship in accordance with the plans and specifica-
tions filed as a matter of public record, the applicable building codes, ordinances and industry
standards, and good design, engineering, and construction practices; and free from water in-
trusion and related damages.

93.    CORPORATE DEFENDANT breached the implied warranties by negligently
constructing the Homes as set forth in paragraphs 32 and 52 above and for failing to remedy
same.

94.    The defects and deficiencies alleged above have led to community-wide water
intrusion damages and other damages to the Homes.

95.    As a proximate cause of CORPORATE DEFENDANT's conduct and omis-
sions, the Association and its members have and continue to suffer damages which include,

without limitation, the cost to repair the defects and deficiencies in the Homes, which are now and will continue to pose a threat to the health, safety, and welfare of the Association and its members, their guests, and the general public until such repairs are effectuated, as well as damages incident to, and consequences of CORPORATE DEFENDANT's breach. Damages, in an amount to be determined at trial, are in excess of $15,000.00 and continuing.

96.     As a direct and proximate result of CORPORATE DEFENDANT's breaches of the above-mentioned warranties, the Association, through assessment of its members, has expended and will be required to expend additional large sums of money to remedy the defects and deficiencies, and to pay consequential damages to or on behalf of its members.

97.     As a result of CORPORATE DEFENDANT's breaches of the implied warranties, the Association has been compelled to retain the services of attorneys to comply with statutory requirements prior to litigation, to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

WHEREFORE, the Association demands judgment against CORPORATE DEFENDANT for damages including, but not limited to, the cost of repairing the construction deficiencies, the resulting damages from the construction deficiencies, the incidental and consequential damages caused thereby, costs incurred in the prosecution of this lawsuit, prejudgment interest, and trial by jury, and for any other relief the Court deems just and proper.

## COUNT VI

## DECEPTIVE AND UNFAIR TRADE PRACTICES

*(THE ASSOCIATION v. CORPORATE DEFENDANT)*

98.     The Association adopts and re-alleges paragraphs 1-97 above.

99.     The Association and its members are consumers as that term is defined in § 501.203(7), Florida Statutes.

100.    CORPORATE DEFENDANT was involved in "trade or commerce" at all times relevant herein as that term is defined in § 501.203(8), Florida Statutes, when constructing and selling the Homes to the members of the Association.

101.    CORPORATE DEFENDANT employed unfair or deceptive acts on purchasers in violation of Florida Statutes § 501.204(1), Florida Statutes, that were likely to mislead consumers, as follows:

    i.      Express and implied representations that the Homes were constructed in a good and workmanlike manner and in accordance with at least the minimum standards of the applicable building codes, when CORPORATE DEFENDANT knew or should have known the Homes were in fact not;

    ii.     Directing and/or approving work performed by subcontractors that CORPORATE DEFENDANT knew or should have known was in violation of the applicable building codes;

    iii.    Unfairly and wrongfully denying warranty repair requests on the basis of lack of homeowner maintenance when the issues with the Homes arose from CORPORATE DEFENDANT's faulty construction, rather than lack of owner maintenance, and CORPORATE DEFENDANT knew or should have known of same; and

    iv.     CORPORATE DEFENDANT knew or should have known that it was wrongfully denying warranty repairs requests as it had the knowledge, experience, education and training to know that other communities built by CORPORATE DEFENDANT have suffered similar damages and losses yet chose to continue denying proper and timely warranty requests by owners of the Homes.

102. CORPORATE DEFENDANT knew or should have known that the Homes and buildings throughout the community suffered from construction deficiencies, water intrusion, construction performed in violation of the applicable building codes, and other substantial defects that, if known, the Association's members would not have purchased their Homes for the full purchase price, or would not have purchased their Homes at all.

103. CORPORATE DEFENDANT negligently, recklessly, and/or intentionally concealed the defects identified above.

104. The representations and concealments set forth above were in derogation of Florida public policy as embodied in the Florida common law requiring sellers of real property to disclose material defects not readily apparent to a buyer of real property.

105. CORPORATE DEFENDANT's actions as set forth herein and in paragraphs 32 and 52 above were done so in an effort to maximize profits; to place profits over the health, welfare, and safety of its consumers; and to satisfy CORPORATE DEFENDANT's corporate greed and self-interest, as CORPORATE DEFENDANT knew or should have known it would be unable to sell the Homes to consumers had the substantial construction deficiencies been disclosed.

106. Construction experts have discovered that the Homes a were not constructed in a good and workmanlike manner, not in accordance with at least the minimum standards of the applicable building codes and other industry standards, and are plagued by water intrusion and related damages.

107. As a proximate cause of CORPORATE DEFENDANT's deceptive and unfair trade practices, the Homes have suffered actual damages by way of diminution in value in an amount to be determined at trial, which exceeds $15,000.00.

108. As a result of CORPORATE DEFENDANT's deceptive and unfair trade practices, the Association has been compelled to retain the services of legal counsel to comply

with statutory requirements prior to litigation and to institute and prosecute these proceed-ings, and to retain expert consultants and witnesses as reasonably necessary to prove its case, thus entitling the Association to an award of attorneys' fees and costs in amounts to be estab-lished at the time of trial.

WHEREFORE, the Association demands judgment against CORPORATE DE-FENDANT for diminution in value damages, actual damages, attorneys' fees, and costs pur-suant to the Florida Deceptive & Unfair Trade Practices Act, and trial by jury. The Associa-tion prays for any other relief the Court deems just and proper.

## COUNT VII

## NEGLIGENCE AND VICARIOUS LIABILITY

*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANT in its Capacity as Developer)*

109.   Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-108 above.

110.   Homeowners, individually and as Class Representatives, bring this claim against CORPORATE DEFENDANT for Homes in which it served as the Developer.

111.   CORPORATE DEFENDANT served as the developer for the Homes. As such, CORPORATE DEFENDANT was responsible for all aspects of the construction of the Homes, including, but not limited to, exercising reasonable care in the design and construc-tion of the Homes; and in ensuring its contractors and subcontractors constructed the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manu-facturers' guidelines, and industry standards.

112.   As the developer, CORPORATE DEFENDANT had non-delegable duties to Homeowners to exercise reasonable care so that the Homes were constructed (a) in compli-

ance with the permitted plans and specifications, the Florida Building Code, industry stand-ards, and manufacturers' recommendations; and (b) so as to avoid damaging the Homes.

113.    CORPORATE DEFENDANT breached its duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stuc-co Deficiencies, thereby necessitating repairs.

114.    As the developer for the subject project, CORPORATE DEFENDANT is vi-cariously responsible for the negligent construction performed on the Homes by its contrac-tors and subcontractors for those Homes on which CORPORATE DEFENDANT served as developer.

115.    As a direct and proximate result of CORPORATE DEFENDANT's breach of the above-mentioned duties, Homeowners will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

WHEREFORE, Homeowners, Individually and as Class Representatives, demand tri-al by jury and judgment against CORPORATE DEFENDANT for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT VIII

## NEGLIGENCE AND VICARIOUS LIABILITY

*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE*
*DEFENDANT and INDIVIDUAL DEFENDANTS in their Capacity as General Contractors*
*and Qualifiers, Respectively)*

116.    Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-115 above.

117.    Homeowners, individually and as Class Representatives, bring this claim against CORPORATE DEFENDANT and its respective INDIVIDUAL DEFENDANTS for those homes on which they served as the general contractors and/or primary qualifiers.

118.    CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for certain of the Homes and were responsible for all aspects of the construction of said Homes, including, but not limited to, exercising reasonable care in designing and constructing the Homes; and in constructing and overseeing the construction of the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

119.    As general contractors and/or qualifiers, CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS had non-delegable duties to the Homeowners to exercise reasonable care in constructing the Homes in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations and guidelines and in such a way so to not damage other property.

120.    CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS breached their duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stucco Deficiencies, thereby necessitating repairs.

121.    As the general contractors and/or qualifiers for the Homes, CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS are vicariously responsible for the negligent construction performed by their subcontractors which worked on the Homes.

122.    As a direct and proximate result of CORPORATE DEFENDANT's and INDIVIDUAL DEFENDANTS' breaches of the above-mentioned duties, Homeowners will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

WHEREFORE, Homeowners, individually and as Class Representatives, demand trial by jury and judgment against CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT IX

## BREACH OF FLORIDA BUILDING CODE

*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANT in its Capacity as Developers)*

123.    Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-122 above.

124.    Homeowners, individually and as Class Representatives, bring this claim against CORPORATE DEFENDANT for the Homes, on which it served as Developer.

125.    The Homes were required to be built in accordance with the Code.

126.     CORPORATE DEFENDANT served as the developer and designer for the construction of the Homes, and thus had a responsibility not to commit violations of the Code.

127.     As the entity  actively participating in and responsible for constructing the Homes, CORPORATE DEFENDANT owed to Homeowners, its members, and future fore-seeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

128.     CORPORATE DEFENDANT actively participated in the construction of the Homes in its capacity as developer; directly supervised and influenced the manner in which all of the work was performed; and/or negligently created and/or negligently approved the Stucco Deficiencies. As a result, CORPORATE DEFENDANT committed violations of the Florida Building Code, violating § 553.84, Florida Statutes.

129.     CORPORATE DEFENDANT knew or should have known that the building code violations existed.

130.     As a direct and proximate result of CORPORATE DEFENDANT's violations of § 553.84 Fla. Stat., the Homeowners will be required to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, in-cluding, but not limited to, those conditions described herein, and to repair the building code violations. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

WHEREFORE, Homeowners, Individually and as Class Representatives, demand tri-al by jury and judgment against CORPORATE DEFENDANT for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including,

without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT X

## BREACH OF FLORIDA BUILDING CODE

*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS in their Capacity as General Contractors and Qualifiers, Respectively)*

131.    Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-130 above.

132.    Homeowners, individually and as Class Representatives, bring this claim against CORPORATE DEFENDANT and its respective INDIVIDUAL DEFENDANTS for those Homes on which they served as the general contractor(s) and/or primary qualifiers.

133.    The Homes were required to be built in accordance with the Code.

134.    CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for the construction of certain of the Homes, and thus had a responsibility not to commit violations of the Code.

135.    As the party responsible for obtaining and pulling the permits for the construction of certain of the Homes, CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS owed to Homeowners and future foreseeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

136.    CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS actively participated in the construction of the Homes in their capacity as general contractor(s) and/or primary qualifier(s); directly supervised and influenced the manner in which all of the work was performed; pulled required permits; and/or negligently created and/or negligently approved the Stucco Deficiencies. As a result, CORPORATE DEFENDANT and INDIVIDU-

AL DEFENDANTS committed violations of the Florida Building Code, violating § 553.84, Florida Statutes.

137.     CORPORATE DEFENDANT and INDIVIDUAL DEFENDANTS knew or should have known that the building code violations existed.

138.     As a direct and proximate result of CORPORATE DEFENDANT's and IN-DIVIDUAL DEFENDANTS' violations of § 553.84, Fla. Stat., Homeowners will be re-quired to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, including, but not limited to, those conditions described herein, and to repair the building code violations. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

WHEREFORE, Homeowners, individually and as Class Representatives, demand tri-al by jury and judgment against CORPORATE DEFENDANT and INDIVIDUAL DE-FENDANTS for damages including, but not limited to, the cost of repairing the Stucco Defi-ciencies (including, without limitation, the costs to investigate and diagnose the stucco defi-ciencies); the resulting damages from the Stucco Deficiencies; the incidental and consequen-tial damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT XI

### BREACH OF IMPLIED WARRANTIES

*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANT)*

139.     Homeowners adopt and re-allege paragraphs 1-138 above.

140.     As the developer and general contractor of the Homes, CORPORATE DE-FENDANT impliedly warranted to Homeowners that each of the Homes was designed and constructed free from defect or deficiency in materials or workmanship in accordance with

the plans and specifications filed as a matter of public record, the applicable building codes and all applicable local and national codes, ordinances and industry standards, and good design, engineering, and construction practices. These implied warranties are those generally described as implied warranties of fitness, merchantability, habitability, and/or workmanlike construction.

141.    Homeowners relied upon the warranties, skill, and judgment from CORPORATE DEFENDANT to ensure the condition of the Homes was free from defect or deficiency in materials or workmanship in accordance with the plans and specifications filed as a matter of public record, the applicable building codes, ordinances and industry standards, and good design, engineering, and construction practices; and free from water intrusion and related damages.

142.    CORPORATE DEFENDANT breached the implied warranties by negligently constructing the Homes as set forth in paragraphs 32 and 52 above and for failing to remedy same.

143.    The aggregate effect of the defects and deficiencies set forth above has led to community-wide water intrusion damages and other damages.

144.    As a proximate cause of CORPORATE DEFENDANT's conduct and omissions, Homeowners have and continue to suffer damages which include, without limitation, the cost to repair the defects and deficiencies in the Homes, which are now and will continue to pose a threat to the health, safety, and welfare of the Association and its members, their guests, and the general public until such repairs are effectuated, as well as damages incident to, and consequences of CORPORATE DEFENDANT's breach. Damages, in an amount to be determined at trial, are in excess of $15,000.00 and continuing.

145.    As a direct and proximate result of CORPORATE DEFENDANT's breaches of the above-mentioned warranties, Homeowners have expended and will be required to ex-

pend additional large sums of money to remedy the defects and deficiencies, and to pay consequential damages to or on behalf of its members.

146.    As a result of CORPORATE DEFENDANT's breaches of the implied warranties, Homeowners have been compelled to retain the services of attorneys to comply with statutory requirements prior to litigation, to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

WHEREFORE, Homeowners demand judgment against CORPORATE DEFENDANT for damages including, but not limited to, the cost of repairing the construction deficiencies, the resulting damages from the construction deficiencies, the incidental and consequential damages caused thereby, costs incurred in the prosecution of this lawsuit, prejudgment interest, and trial by jury, and for any other relief the Court deems just and proper.

## COUNT XII

## DECEPTIVE AND UNFAIR TRADE PRACTICES

(*HOMEOWNERS v. CORPORATE DEFENDANT*)

147.    Homeowners adopt and re-allege paragraphs 1-146 above.

148.    Homeowners are consumers as that term is defined in § 501.203(7), Florida Statutes.

149.    CORPORATE DEFENDANT was involved in "trade or commerce" at all times relevant herein as that term is defined in § 501.203(8), Florida Statutes, when constructing and selling the Homes to the members of the Association.

150.    CORPORATE DEFENDANT employed unfair or deceptive acts on purchasers in violation of Florida Statutes § 501.204(1), Florida Statutes, that were likely to mislead consumers. This included the following:

      i.      Express and implied representations that the Homes were constructed in a good and workmanlike manner and in accordance with at least the

minimum standards of the applicable building codes, when CORPO-
RATE DEFENDANT knew or should have known the Homes were in
fact not;

ii.     Directing and/or approving work performed by subcontractors that
CORPORATE DEFENDANT knew or should have known was in vio-
lation of the applicable building codes;

iii.    Unfairly and wrongfully denying warranty repair requests on the basis
of lack of homeowner maintenance when the issues with the Homes
arose from CORPORATE DEFENDANT's faulty construction, rather
than lack of owner maintenance and CORPORATE DEFENDANT
knew or should have known of same; and

iv.    CORPORATE DEFENDANT knew or should have known that it was
wrongfully denying warranty repairs requests as it had the knowledge,
experience, education and training to know that other communities
built by CORPORATE DEFENDANT have suffered similar damages
and losses yet chose to continue denying proper and timely warranty
requests by owners of the Homes.

151.    CORPORATE DEFENDANT knew or should have known that the buildings
throughout the Homes suffered from construction deficiencies, water intrusion, construction
performed in violation of the applicable building codes, and other substantial defects that, if
known, the Association's members would not have purchased their Homes for the full pur-
chase price, or would not have purchased their Homes at all.

152.    CORPORATE DEFENDANT negligently, recklessly, and/or intentionally
concealed the defects identified above.

         1160876\v5

153.    The representations and concealments set forth above were in derogation of Florida public policy as embodied in the Florida common law requiring sellers of real property to disclose material defects not readily apparent to a buyer of real property.

154.    CORPORATE DEFENDANT's actions as set forth herein and in paragraphs 32 and 52 above were done so in an effort to maximize profits; to place profits over the health, welfare, and safety of its consumers; and to satisfy CORPORATE DEFENDANT's corporate greed and self-interest, as CORPORATE DEFENDANT knew or should have known it would be unable to sell the Homes to consumers had the substantial construction deficiencies been disclosed.

155.    Construction experts have discovered that the Homes were not constructed in a good and workmanlike manner and not in accordance with at least the minimum standards of the applicable building codes and other industry standards, and are plagued by water intrusion and related damages.

156.    As a proximate cause of CORPORATE DEFENDANT's deceptive and unfair trade practices, the Homes and have suffered actual damages by way of diminution in value in an amount to be determined at trial, which exceeds $15,000.00.

157.    As a result of CORPORATE DEFENDANT's deceptive and unfair trade practices, the Association and Homeowners have been compelled to retain the services of legal counsel to comply with statutory requirements prior to litigation and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case, thus entitling the Association and Homeowners to an award of attorneys' fees and costs in amounts to be established at the time of trial.

WHEREFORE, Homeowners demand judgment against CORPORATE DEFENDANT for diminution in value damages, actual damages, attorneys' fees, and costs pursuant to

the Florida Deceptive & Unfair Trade Practices Act, and trial by jury. Homeowners pray for

any other relief the Court deems just and proper.

Dated: October 24, 2018                          s/ Evan J. Small
                                                 Phillip E. Joseph, FL No. 1000368
                                                 Email: pjoseph@balljanik.com
                                                 James C. Prichard, FL No. 1000397
                                                 Email: jprichard@balljanik.com
                                                 Evan J. Small, FL No. 57306
                                                 Email: esmall@balljanik.com
                                                 Kelly M. Corcoran, FL No. 55564
                                                 Email: kcorcoran@balljanik.com
                                                 Brett J. Roth, FL No. 102214
                                                 Email: broth@balljanik.com
                                                 Ball Janik LLP
                                                 201 E Pine Street, Suite 600
                                                 Orlando, FL 32801
                                                 Tel: (407) 455-5664
                                                 Fax: (407) 902-2105
                                                 Attorneys for Plaintiffs

**EXHIBIT A**

| | | |
|---|---|---|
| 1. | Alrifai, Ghazi & Kazma, Souha | 2217 Pinyon Rd. |
| 2. | Boyd, Gregory | 2204 Pinyon Rd. |
| 3. | Brown, Jovan M. & Wood, Audra M. | 913 Seburn Rd |
| 4. | Brown, Kyra and Tony | 1198 Tallow Rd. |
| 5. | Duarte, Hector & Lopez, Martiza | 900 Seburn Rd |
| 6. | Edwards, Rhea & Wade | 2022 Rafton Rd |
| 7. | Garcia, Lisseidy & Marcelo | 943 Seburn Rd |
| 8. | Garner, Clare Lee & Kathleen M. | 2123 Sunbow Rd |
| 9. | Jackson, Adam & Danae | 2111 Edmands Pl. |
| 10. | Jackson, Justin Lamar & Davis, Traci | 2222 Pinyon Rd. |
| 11. | Jinadu, Ayodele | 2211 Pinyon Rd. |
| 12. | Martin, Anita & Travis | 1232 Tallow Rd. |
| 13. | McGriff, Jonathan | 2199 Pinyon Rd. |
| 14. | Mejias (Villegas), David & Busch, Juliana | 960 Seburn Rd. |
| 15. | Naffziger, Robert D & Naffziger, Deanna L. | 2228 Pinyon Rd. |
| 16. | Ortiz, Edgard | 901 Seburn Rd |
| 17. | Reyes, Rose and James | 2216 Pinyon Rd. |
| 18. | Simon, Terra | 2047 Nobscot Pl |
| 19. | Stanley, Benjamin and Lee Ann | 2135 Edmands Pl. |

1160876\v5

CERTIFICATE OF SERVICE

I certify that on October 24, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: October 24, 2018

s/ Evan J. Small
Evan J. Small, FL No. 57306
Attorneys for Plaintiffs